UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────────

JOSEPH DELMONTE,

                                    Plaintiff,

                    -vs-                                    14-CV-273-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                    Defendant.

─────────────────────────────────────────────

APPEARANCES:   LEWIS L. SCHWARTZ, ESQ., Buffalo, New York, for Plaintiff.

WILLIAM J. HOCHUL, JR., United States Attorney (Karen T. Callahan, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated December 15, 2014 (Item 10).

Plaintiff Joseph Delmonte initiated this action on April 16, 2014, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Acting Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Act.  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 6, 8).  For the following reasons, plaintiff's motion is denied, and the Commissioner's motion is granted.

**BACKGROUND**

Plaintiff was born on November 28, 1953 (Tr. 28, 111).[1]   He filed an application for SSDI on April 27, 2011, alleging disability due to hearing loss, bilateral inguinal hernias, hemophilia and vision problems in his right eye, with an onset date of March 1, 2009 (Tr. 109-17).   This claim was denied administratively on July 20, 2011 (*see* Tr. 12, 54-61). Plaintiff requested a hearing, which was held on October 31, 2012, before Administrative Law Judge ("ALJ") Eric L. Glazer (Tr. 24-44).   Plaintiff appeared and testified at the hearing, and was represented by counsel.

On November 16, 2012, ALJ Glazer issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 12-18).   Following the five-step sequential evaluation process outlined in the Social Security Administration regulations governing clains under Title II (*see* 20 C.F.R. § 404.1520), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date (Tr. 14), and at step two that plaintiff's medically determinable impairments (identified as vision loss in the right eye, hearing loss in the left ear, bilateral inguinal hernias, and hemophilia), considered alone or in combination, did not significantly limit his ability to perform work-related activities for 12 consecutive months during the period of disability alleged,[2] as required to qualify for benefits under the Act (Tr. 14-15).   This decision became the final determination

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 5).

[2]Prior to the hearing, plaintiff agreed (through stipulation of counsel) to amend his claim to assert a closed period of disability beginning March 1, 2009, and ending September 13, 2011, upon recovery from surgical repair of his bilateral inguinal hernias (*see* Tr. 171-72).   *See* 20 C.F.R. § 404.1594.

10

of the Commissioner on April 4, 2014, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed, or remanded for further consideration, because the ALJ (1) failed to properly assess the severity of plaintiff's multiple impairments; (2) failed to properly assess plaintiff's credibility; and (3) failed to discharge his affirmative duty to develop the record. *See* Item 6-1. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence in the record. *See* Item 8-1.

## **DISCUSSION**

### I.   **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied … the court shall review only the question of conformity with [the] regulations …."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental

impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is a medically determinable physical or mental impairment, or combination of impairments, that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 404.1520(c); *see also* § 404.1509 (duration requirement). If the ALJ finds that the claimant's impairment or combination of impairments is not severe, or is not of qualifying duration, the sequential evaluation ends at step two, and the claim is denied. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

If the severity and duration requirements are met, the ALJ then determines at the third step whether the claimant's impairment meets or equals the criteria of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to

perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, a limited evidentiary burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); 20 C.F.R. § 404.1560(c)(2).

### III.    The ALJ's Disability Determination

As indicated, in this case the ALJ concluded his analysis of plaintiff's claim at step two of the sequential evaluation process, finding that plaintiff's physical impairments, considered either alone or in combination, were not "severe" under the regulations because the impairments did not significantly limit plaintiff's ability to perform work-related activities for 12 consecutive months (Tr. 14-16).  In reaching this conclusion, the ALJ first discussed plaintiff's hearing testimony regarding the symptoms of his impairments and found that plaintiff's statements concerning the intensity, persistence and limiting effect of his symptoms were not credible to the extent they were inconsistent with the "severity" determination (Tr. 14-15).  The ALJ then discussed the medical records which revealed

that plaintiff underwent no significant medical treatment for any of his claimed impairments prior to December 2010 (nearly two years after the alleged onset date), when he was diagnosed with detached retina and retinal tear in his right eye after being struck by the tip of a palm leaf (Tr. 16, 185).   The ALJ noted that, following surgery, plaintiff's corrected vision resulted in no more than minimal functional limitations (Tr. 16-17).   The ALJ also found no evidence of significant functional limitations caused by hearing loss or hemophilia, and no long term limitations following surgical repair of his inguinal hernias in August 2011 (*id.*).   Finally, the ALJ noted that the record contained no treating, examining, or consulting medical source opinion evidence pertaining to plaintiff's functional limitations or his ability to work (Tr. 18).   Based on this review, and "given the lack of significant medical treatment for any impairments prior to December 2010, along with plaintiff's admitted capabilities as outlined by his testimony and documented in the medical records …," the ALJ found that plaintiff did not meet his burden to show that he has an impairment or combination of impairments that significantly limits his ability to perform basic work activities, and was therefore not under a disability within the meaning of the Act (Tr. 18).

## IV.   Plaintiff's Motion

### A.   Severity

Plaintiff first argues that the Commissioner's determination should be reversed, or remanded for further consideration, because the ALJ improperly evaluated the severity of plaintiff's medically determinable physical impairments.   The determination of "severity" at step two of the sequential evaluation process is guided by the regulations as follows:

At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

20 C.F.R. § 404.1520(a)(4)(ii).  To be medically determinable, an impairment:

… must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms ….

20 C.F.R. § 404.1508.  To be severe, an impairment must "significantly limit [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R § 404.1521(a), which are "the abilities and aptitudes necessary to do most jobs," listed in the regulations as:

(1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2)  Capacities for seeing, hearing, and speaking;

(3)  Understanding, carrying out, and remembering simple instructions;

(4)  Use of judgment;

(5)  Responding appropriately to supervision, co-workers and usual work situations; and

(6)  Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).  In addition, and as already indicated, the impairment or combination of impairments "must either last or be expected to last for a continuous period of at least 12 months" or be expected to result in death.  20 C.F.R. § 404.1509; *see* *Whiteside v. Colvin*, 2014 WL 585303, at *8 (W.D.N.Y. Feb. 13, 2014).

As already indicated, the claimant bears the burden to present medical evidence establishing the severity of the alleged impairments.  *Flagg v. Colvin*, 2013 WL 4504454,

at *7 (N.D.N.Y. Aug. 22, 2013) (citing 20 C.F.R. § 404.1512(a)).  Although the Second Circuit has held that the ALJ's function at the second step of the sequential evaluation is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citing *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995).  "Indeed, a finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.' " *Flagg*, 2013 WL 4504454, at *7 (quoting *Rosario v. Apfel*, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19,1999)); *see also* Social Security Ruling ("SSR") 85–28, 1985 WL 56856 at *3 (S.S.A. 1985), *quoted in Bowen*, 482 U.S. at 154 n. 12 (1987).

In this case, the ALJ's written decision reflects a thorough consideration of the medical evidence, beginning with treatment records from routine physical examinations by Dr. Terence O'Connor, plaintiff's primary care physician since 2000 (*see* Tr. 131).  As noted by the ALJ, these records reflect treatment in early 2010 for symptoms of bilateral wrist pain (Tr. 196), and follow-up from a visit to the emergency room in May 2010 after he passed out and injured his ribs (Tr. 190), but otherwise show that he was generally in good health during the closed period at issue (from March 2009 through September 2011) (*see* Tr. 181-202, 235-275).

The ALJ also properly traced the onset of plaintiff's visual impairment to an incident in November 2010, when he was struck on the right eye with a palm leaf (Tr. 16; 185-86).

On December 21, 2010, plaintiff saw Albert Schlisserman, M.D., at Southtowns Eye Center, complaining of vision loss, pain, flashes, and floaters in his right eye (Tr. 292, 315). Dr. Schlisserman noted that plaintiff's right eye vision was limited to light perception only, with evidence of possible retinal detachment and tears, and referred him to Faruk M. Koreishi, M.D., at Retina Consultants, for emergency consultation (Tr. 315).    Upon examination, Dr. Koreishi confirmed the presence of right eye retinal detachment and multiple retinal tears, and on the next day–December 22, 2010–Dr. Koreishi performed surgery to reattach the retina, with satisfactory results (Tr. 178-80, 213).  By April 2011, plaintiff had regained visual acuity in the right eye sufficient to count fingers (Tr. 212), but Dr. Koreishi noted a 2+ cataract in the right eye, and gave plaintiff a "very poor" prognosis (Tr. 212).  As noted by the ALJ, plaintiff was scheduled for cataract removal in May 2011, but he cancelled the appointment (Tr. 289).  Dr. Schlisserman later performed cataract removal surgery on February 22, 2012 (Tr. 350), and in September 2012, Dr. Schlisserman reported that plaintiff's best corrected vision was 20/400 in the right eye, and 20/30 in the left eye (Tr. 299).  Based on this record, the ALJ found that despite reduced right eye vision, plaintiff continues to maintain 20/30 visual acuity in the left eye, and continues to perform his daily activities.   Accordingly, the ALJ determined that plaintiff's visual impairment, which commenced in December 2010, caused no more than minimal functional limitations for a twelve consecutive month period during the closed period of disability, which ended on September 13, 2011 (Tr. 16).

With regard to plaintiff's bilateral inguinal hernia impairment, the ALJ first noted plaintiff's testimony indicating "that he had his hernias for years and was able to work with them" (Tr. 17).  The ALJ the reviewed the medical evidence, which revealed no significant

discussion of any pain or functional limitations associated with hernias prior to August 11, 2011, when Dr. O'Connor saw plaintiff for "further evaluation of possible hernia" in the right inguinal area, and referred him to Dr. Jonathan Reynhout for surgical evaluation (Tr. 17, 255).  Dr. Reynhout performed laparoscopic hernia repair on August 22, 2011 (*see* Tr. 276-80), and reported upon follow-up examination on August 30, 2011, that plaintiff was "doing very well" (Tr. 276).  The ALJ also noted that Dr. O'Connor had found "no hernias" upon physical examination in May 2011 (Tr. 260), and the record reflects no significant treatment for this impairment following surgery, with full recovery as of September 13, 2011, the stipulated ending date of the asserted closed period of disability (Tr. 171-72).

Similarly with respect to plaintiff's hearing loss, the ALJ noted the absence of any medical records indicating a hearing problem prior to March 2011, when plaintiff was seen by Dr. Sayeed Nabi (Tr. 204).  An audiogram performed at that time showed normal hearing in the right ear, and 22.5% hearing loss in the left ear for a total binaural hearing loss of only 3.75%, results which Dr. Nabi found to be within normal limits (*id.*).

The ALJ also noted the absence of any medical evidence to support a finding that plaintiff's hemophilia caused more than minimal functional limitations (Tr. 17).

Further, considering the testimony and documented evidence regarding plaintiff's activities of daily living, the ALJ noted that plaintiff lives alone, cares for his own needs, cooks and cleans, cares for his dog, and exercises regularly (Tr. 17).  The record further reflects that plaintiff maintains his driver's license, and drives himself to the grocery store, auctions, and social events (Tr. 137-41).

Finally, the ALJ noted that the record contains no treating, examining, or consulting medical source opinion regarding the effect of plaintiff's functional limitations on his ability to perform work (Tr. 18).

Upon review of the ALJ's decision, and considering the record as a whole, the court finds that the ALJ's evaluation of the evidence was performed in accordance with the regulations and rulings guiding the determination of severity at step two of the sequential evaluation, and further, that there is substantial evidence in the record to support the finding that plaintiff's impairments, considered alone or in combination, did not significantly limit his ability to perform basic work activities for a period of 12 consecutive months during the requested closed period of disability.  Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ improperly evaluated the severity of plaintiff's medically determinable physical impairments.

### B.    Credibility

Plaintiff also contends that the ALJ failed to comply with the requirements of the regulations and rulings guiding the assessment of a claimant's credibility.  The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged.  *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)).  The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the

> pain or symptoms alleged by the claimant.  Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 404.1529 ("How we evaluate symptoms, including pain").

The regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.  20 C.F.R. § 404.1529(c)(3)(i)-(vii); *see Meadors v. Astrue*, 370 F. App'x 179, 184 n. 1 (2d Cir. 2010). The Commissioner's policy interpretation ruling on this process provides the following further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96–7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

As already discussed, in this case the ALJ considered plaintiff's hearing testimony and statements regarding the symptoms of his impairments, along with the medical evidence of record, and found that plaintiff's medically determinable impairments could reasonably be expected to produced the symptoms alleged.  However, the ALJ also found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his vision and hearing loss, hemophilia, and hernia pain were not credible to the extent as he alleged (*see* Tr. 16).  In making this determination, the ALJ considered plaintiff's testimony indicating that he retired from his truck driving job on March 1, 2009 (the alleged onset date) not only because he felt his body could no longer take the work, but also because he was offered early retirement and had enough years of service (Tr. 15, 26-27, 127). Plaintiff also testified that he was able to pass the annual eye examinations and hearing tests required for certification as a truck driver, and that he was able to obtain a pistol permit after he retired (Tr. 16, 27-28, 36).  The ALJ noted the inconsistencies between plaintiff's acknowledged activities of daily living during the period at issue and his claim of disabling functional limitations (Tr. 17), and as discussed above, the ALJ's severity determination was reached upon thorough examination of the record, and is supported by substantial objective medical evidence.

Based on this assessment, the court finds that the ALJ's finding regarding plaintiff's credibility is sufficiently grounded in the evidence and articulated in the written determination to make clear to plaintiff, to this court, and to subsequent reviewers the weight given to plaintiff's statements about his functional limitations, and the reasons for that weight.  As such, the credibility inquiry was performed in accordance with the

requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority, and plaintiff is not entitled to reversal or remand on this ground.

### C.    Duty to Develop the Record

Finally, plaintiff contends that the ALJ failed to discharge his duty to develop the record by obtaining further reports and treatment notes from Dr. O'Connor covering the period from the alleged onset date of March 1, 2009 through January 2010.  The Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel …."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted).  This duty "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled …," as well as "advising the plaintiff of the importance of such evidence."  *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004).  On the "flip-side" of this same proposition, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).

In this case, the ALJ found that the medical evidence of record regarding plaintiff's treatment during the period from March 2009 to December 2010 consisted solely of the reports of Dr. O'Connor's routine physical examinations, with no report of any significant

treatment for his alleged disabling impairments until his eye injury in December 2010 (*see* Tr. 61).  Plaintiff points out that he has treated with Dr. O'Connor since 2000, but the reports from Dr. O'Connor reviewed by the ALJ only covered the period from February 2010 through March 2011 (*see* Tr. 181-202), and the ALJ did not make any efforts to fill in this gap in order to properly determine whether plaintiff's impairments–particularly, his hernias (which he testified were present while he was still working as a truck driver in 2008-09)–met the twelve-month durational requirement.

In this regard, the court's review of the record reveals that Dr. O'Connor specifically reported "no hernias" were evident upon physical examination of plaintiff in February 2010 (*see* Tr. 196-97); May 2010 (Tr. 190-91); and May 2011 (Tr. 259-60).  Dr. O'Connor did indicate the presence of a small right inguinal hernia in March 2010 (Tr. 193-94), and again in March 2011 (Tr. 182-83), but there was no mention of any pain, treatment, or functional limitation associated with hernias until August 2011, when Dr. O'Connor referred plaintiff to Dr. Reynhout for further evaluation and surgical consultation (*see* Tr. 255-56).  As already indicated, this record provides substantial evidence to support the ALJ's conclusion that plaintiff's hernia condition, considered alone or in combination with his other impairments, did not cause more than minimal functional limitations for twelve consecutive months during the closed period of disability, and there is no reasonable basis to conclude that recontacting Dr. O'Connor for a more complete medical history would alter this determination.

Based upon this review, the court finds no "deficiencies" or "obvious gaps" in the administrative record that should have triggered the ALJ's affirmative obligation to seek additional information from Dr. O'Connor, or from any other treating source.  *See Petrie*,

-17-

412 F. App'x at 406 (where the record is replete with medical records detailing the course of the plaintiff's impairments and treatment, ALJ was under no obligation to seek additional information from treating sources).  Accordingly, plaintiff is not entitled to reversal of the Commissioner's determination, or remand for further consideration, on the ground that the ALJ failed to discharge this obligation.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Therefore, plaintiff's motion for judgment on the pleadings (Item 6) is denied, the Commissioner's motion for judgment on the pleadings (Item 9) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   April 2, 2015
p:\pending\2014\14-273.ssdi.mar25.2015